# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Percy Pooniwala, and Dinaz Pooniwala, | Civil No. 14-778 (DWF/LIB) |
| Plaintiffs, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Wyndham Worldwide, Corp., Super 8 Worldwide, Inc., Travelodge Hotels, Inc., and Days Inn Worldwide, Inc., | |
| Defendants. | |

A. Chad McKenney, Esq., Donohue McKenney, Ltd., counsel for Plaintiffs.

Bryan P. Couch, Esq., LeClairRyan, A Professional Corporation; Anthony J. Novak, Esq., Larson King, LLP, counsel for Defendants.

## INTRODUCTION

This matter is before the Court on Plaintiffs Percy Pooniwala's ("P. Pooniwala")

and Dinaz Pooniwala's ("D. Pooniwala") (collectively, "Plaintiffs") Motion for

Preliminary Injunction against Defendants Wyndham Worldwide Corp.[1] ("Wyndham"),

Super 8 Worldwide, Inc. ("Super 8"), Travelodge Hotels, Inc. ("Travelodge"), and Days

Inn Worldwide, Inc. ("Days Inn") (collectively, "Defendants") to enjoin Defendants from

---

[1]     Defendants state that Plaintiffs improperly named Wyndham Worldwide Corp. as
Wyndham Worldwide, Inc.

taking actions relating to various franchise agreements.  (Doc. No. 12.)  For the reasons set forth below, the Court denies the motion.

## BACKGROUND

Plaintiffs entered into a number of franchise agreements for various hotels with Defendants.  Plaintiffs assert Wyndham Hotel Group LLC ("Wyndham Group") is the operating entity associated with Defendants Super 8, Travelodge, and Days Inn, as well as Ramada Worldwide Inc.[2]  (Doc. 1 (Compl.) ¶ 2.)  Generally, Plaintiffs allege that as a result of a lawsuit between Plaintiffs and Ramada Worldwide Inc. relating to the Ramada Brooklyn Park, also known as Grand Rios Water Park Resort ("Grand Rios"), Defendants are retaliating against Plaintiffs at a number of other properties franchised by Plaintiffs.[3]  (*Id.* at ¶¶ 13-53.)  The motion before the Court focuses on the agreements for three such facilities:[4]  (1) Super 8 Roseville; (2) Travelodge Burnsville; and (3) Days Inn Roseville.

---

[2]   Letters from Travelodge, Super 8, Days Inn, and Ramada Worldwide state that those entities are owned by Wyndham Hotel Group LLC.  (*See, e.g.*, Doc. No. 15 ("Pooniwala Aff.") ¶ 14, Ex. E.)  For ease, when describing the actions taken by some of these entities, the Court will refer to them generally as the Wyndham Group.

[3]   Plaintiffs purchased Grand Rios in September 2010.  (Pooniwala Aff. ¶ 3.)  The roof collapsed, the hotel closed, and the bank repossessed the hotel in June 2011.  (*Id.*)  An invoice in the amount of $57,737 was pending as of July 2013.  (*Id.*)  The Wyndham Group sent a termination letter for the Grand Rios contract in June 2011 and filed a lawsuit for damages against Plaintiffs in United States District Court for the District of New Jersey in July 2013.  (*See* Doc. No. 24, ("Fenimore Aff.") ¶¶ 98-103 & Exs. AA-DD.)

[4]   Plaintiffs represented at oral argument that the Days Inn Brooklyn Center had not yet been closed by Defendants, and Plaintiffs therefore did not need to address that facility at this time.  Defendants' memorandum in opposition to Plaintiffs' motion confirms that "[b]y letter dated April 14, 2014, [Defendant Days Inn] advised [Plaintiffs]
(Footnote Continued on Next Page)

I.      **Super 8 Roseville**

On or about May 16, 1994, Super 8 and Hotel Capital Partners X, LLC entered

into an agreement for the operation of a Super 8 hotel facility in Roseville, Minnesota

("Super 8 Roseville").  (Fenimore Aff. ¶ 32, Ex. A.)  In August 2007, Plaintiffs

purchased Super 8 Roseville for approximately $4.3 million.  (*Id.* ¶ 33, Ex. B.)  On or

about August 14, 2007, D. Pooniwala signed an assignment and assumption agreement

with Super 8 that acknowledged and assumed all rights, benefits and obligations of Hotel

Capital Partners X, LLC with respect to the 1994 Agreement for the Super 8 Roseville.

(*Id.*)

The franchise agreement ("Super 8 Roseville Agreement") for the Super 8

Roseville includes a section relating to operating the facility in compliance with

Super 8's System Standards and also includes quality assurance requirements.  (*Id.* ¶ 35.)

The Super 8 Roseville Agreement includes a provision that gives Super 8 the right to

inspect the facility to ensure that it meets quality assurance ("QA") requirements and

System Standards.  (*Id.* ¶ 36.)  The Super 8 Roseville Agreement also gives Super 8 the

right to terminate the agreement within 60 days after providing written notice that

specifies the reasons for the termination, including any failure to remedy defaults on

obligations and warranties under the Super 8 Roseville Agreement.  (*Id.* ¶ 38.)

---

(Footnote Continued From Previous Page)
that the termination of the [Days Inn] Brooklyn Center Agreement has been temporarily
suspended until further notice."  (Fenimore Aff. ¶ 77, Ex. R.)

On September 30, 2013, Plaintiffs received a notice of termination for Super 8
Roseville.  (Pooniwala Aff. ¶ 11, Ex. B.)  The notice referred to QA failures and stated
that the franchise agreement would terminate within 90 days of the notice, on
December 29, 2013.  (*Id.*)  Plaintiffs allege that this was the first time that Defendants
sought to terminate a property based on QA problems.  (*Id.* ¶ 11.)

The termination notice was issued pursuant to a property inspection.  (*Id.*)  The
inspections were conducted by a Wyndham Group employee.  (*Id.*)  Plaintiffs claim the
Super 8 Roseville was inspected every 2-3 months, but other properties are only
inspected a single time every 18-24 months.  (*Id.*)  Wyndham Group charges $1,700 per
inspection.  (*Id.*)  Plaintiffs claim that Defendants use QA reports to leverage extra
charges.  (*Id.*)  Plaintiffs allege that inspections often focus on issues such as the use of
promotional materials and the failure to use specific breakfast-related brands.  (*Id.*)
Plaintiffs assert that Defendants receive kickbacks for these breakfast items, and
customers are overcharged as a result.  (*Id.*)

Defendants claim that, beginning in January 2012, Plaintiffs repeatedly failed to
operate the facility in accordance with the System Standards and QA requirements of the
Super 8 Roseville Agreement.  (Fenimore Aff. ¶ 40.)  According to Defendants,
beginning in January 2012, Plaintiffs failed six consecutive QA inspections.  (*Id.* ¶ 41,
Ex. C.)  Defendants followed each inspection with a letter that indicated Plaintiffs' failing
score, gave notice of 60 days to cure prior to default, and informed Plaintiffs that if they
failed to cure the defaults, termination could follow.  (*Id*. ¶ 42, Ex. D.)

4

Plaintiffs repeatedly disputed the QA inspection results, including the following issues:  the contents of the results, the methodology for the inspection and scoring process, their final score, the adequacy of the notice associated with the termination notice, and they also addressed a number of specific items in the report relating to housekeeping.  (*See* Pooniwala Aff. ¶¶ 12-16 & Exs. C, D, F.)  Plaintiffs also allege that they cured all deficiencies and received a passing score of 74.55%, but that Defendants told Plaintiffs that due to the Guest Housekeeping section of the inspection, their final score was in fact 63.16%, which constitutes a failing score (70% is required to pass).  (*Id.* ¶ 14.)

On December 5, 2013, Defendants sent a letter to Plaintiffs setting an additional inspection to determine whether the QA concerns had been cured.  (*Id.* ¶ 14, Ex. E.) Defendants allege that Plaintiffs never cured their defaults.  (Fenimore Aff. ¶ 43.)  On December 27, 2013, Wyndham Group informed Plaintiffs that the termination was to be effective as previously scheduled—for December 29, 2013.  (Pooniwala Aff. ¶ 17, Ex. G.)

Plaintiffs allege that Defendants' employees receive commissions and bonuses when they initiate new contracts or new franchises for a property.  (*See id*. ¶ 17, Ex. H.) Plaintiffs also claim that certain franchisors contract with travel websites, travel search engines and GPS maps and prohibit individual owners of hotels from signing up with those websites and services, and charge a $4,000 fee to allow hotel owners to turn on the reservation systems once they have been shut off.  (*Id*. ¶ 7.)  Plaintiffs assert that Defendants also maintain a practice whereby they cause customers to be diverted to other

franchisees when they contact a "blocked" franchisee via website or 1-800 reservation telephone number.  (*Id.* ¶ 9.)  These practices result in lost and diverted reservations. (*Id.*)  Plaintiffs allege that Defendants use these practices to damage hotel owners when they choose.  (*Id.*)  Since December 29, 2013, Super 8 Roseville has been off of the franchisee reservation system, and Plaintiffs allege they have lost business as a result, including that of large, longtime clients.  (*Id.* ¶ 23.)  Plaintiffs also allege that certain Wyndham Group employees have told Plaintiffs in confidence that these issues will not be resolved until the money related to Rios Grande is paid off.  (*Id.* ¶ 19.)

## II.    Travelodge Burnsville

Plaintiffs purchased a Travelodge in Burnsville, Minnesota ("Travelodge Burnsville") for approximately $2.7 million in or around August 2008.  (Pooniwala Aff. ¶ 25.)  Plaintiffs and Travelodge entered into a franchise agreement for Travelodge Burnsville at that same time ("Travelodge Burnsville Agreement").  (Fenimore Aff. ¶ 47, Ex. H.)

The Travelodge Burnsville Agreement includes a section relating to operation of the facility in compliance with Travelodge's System Standards and also includes quality assurance requirements.  (*Id.* ¶ 49.)  The Travelodge Burnsville Agreement includes a provision that gives Travelodge the right to perform unlimited inspections and reinspections of the facility to ensure QA requirements are met.  (*Id.* ¶ 50.)  The Travelodge Burnsville Agreement also gives Travelodge the right to terminate the agreement by written notice from Travelodge if Plaintiffs are in default of any obligations under the Agreement and if the notice specifies the defaults.  (*Id.* ¶¶ 52, 54.)

6

Plaintiffs received a notice of termination of the franchise agreement for the Travelodge Burnsville on September 30, 2013 from the Wyndham Group. (Pooniwala Aff. ¶ 11, Ex. B.) The notice referred to QA failures, and stated that the Travelodge Burnsville Agreement would terminate within 90 days, on December 29, 2013. (*Id.*)

Defendants allege that since November 2010, Plaintiffs failed to operate the facility in accordance with the Travelodge Burnsville Agreement. (Fenimore Aff. ¶ 56.) Defendants allege that beginning in November 2010, Plaintiffs failed eight consecutive QA inspections. (*See id.* ¶¶ 56-58, Exs. I, J.) Following each inspection failure Defendants sent letters to Plaintiffs indicating that Plaintiffs had received a failing score, gave notice of 60 days to cure prior to default, and informed Plaintiffs that if default was not cured, termination could occur. (*Id.*) Defendants allege that Plaintiffs never cured their defaults. (*Id.* ¶ 43.)

As with the Super 8 Roseville, Plaintiffs repeatedly contested the QA inspections with respect to their processes, contents, results, and the adequacy of the notice associated with the termination notice. (Pooniwala Aff. ¶¶ 26-27, Ex. K.)

Travelodge Burnsville suffered a fire on December 3, 2013. (*Id.* ¶ 28; *see also id.* ¶ 28, Ex. L.) The facility was closed by the city until the damaged roof was restored, however, more than 75% of the rooms were affected by fire-related damage and the hotel was uninhabitable. (*Id.*)

On December 5, 2013, Defendants sent a letter to Plaintiffs setting an additional inspection to determine whether the QA concerns were cured. (*Id.* ¶ 14, Ex. E.) The same individual who inspected the Super 8 Roseville also came to conduct the inspection

at the Travelodge Burnsville facility.  (*Id.*)  Plaintiffs allege all deficiencies were cured, but that the facility could not pass inspection due to the fire-related damage.  (*Id.* ¶ 29.) Plaintiffs claim that they informed Wyndham Group that the facility could not undergo an inspection due to fire-related damage, but that Wyndham Group conducted the inspection anyway, stating it was a progress report.  (*Id.* ¶¶ 30-32.)  Defendants state that they inspected the facility without evaluating the fire-impacted areas.  (Fenimore Aff. ¶ 62.)

On December 27, 2013, Wyndham Group informed Plaintiffs that the termination was to be effective as previously scheduled—on December 29, 2013.  (Pooniwala Aff. ¶¶ 17, 33 & Ex. G.)  Plaintiffs allege that they had reached agreements with Defendants that if they showed reasonable improvements, then termination would be cancelled, but that Defendants did not uphold these agreements.  (*Id.* ¶¶ 34-35.)

Plaintiffs allege that their reservation system for the Travelodge Burnsville has been shut down a number of times in the last few years.  (*Id.* ¶ 25.)

## III.   Days Inn Roseville

Effective August 8, 2013, the former owner and franchisee of Days Inn Roseville terminated its agreement with Days Inn because it was selling the facility to a third party. (Fenimore Aff. ¶¶ 80-81 & Exs. U, V.)

Plaintiffs bought Days Inn Roseville for approximately $3.6 million in August 2013 and submitted a franchise application to Wyndham Group shortly prior to closing.  (Pooniwala Aff. ¶ 6 & Ex. A.)  Plaintiffs sought to obtain a license to convert

the facility back into a Days Inn facility. (Fenimore Aff. ¶ 82.) Days Inn rejected the application. (*Id.* ¶ 83.)

Plaintiffs allege that in mid-September 2013, Wyndham Group stopped processing the application and removed the property from Wyndham reservation systems and search engines. (Pooniwala Aff. ¶¶ 6-10.) Plaintiffs allege that when they inquired about Wyndham Group's actions, Wyndham Group demanded payment for Grand Rios and has refused to license the Days Inn Roseville until such payment is made. (*See id.*) Plaintiffs estimate that 20-25% of their guests have been lost since September 2013 due to these practices alone. (*Id.* ¶ 10.)

In their complaint, Plaintiffs assert the following claims: (1) Violations of Minnesota Franchise Act; (2) Breach of Contract and Implied Covenant of Good Faith and Fair Dealing; and (3) Retaliation against Plaintiffs. (Compl. ¶¶ 54-81.) In their motion for a preliminary injunction, Plaintiffs seek to enjoin Defendants from taking further action to enforce the termination of the two franchise agreements for the facilities in Roseville and Burnsville, and to order Defendants to accept their application and grant a license for a franchise for an additional facility in Roseville.

## DISCUSSION

### I.    Standing

Defendants argue that Plaintiffs do not have standing to seek a preliminary injunction compelling Days Inn to transfer and assign the Days Inn Roseville to the

applicant Roseville Lodging, LLC[5] because Roseville Lodging, LLC is not a party to this action.  At this phase in the proceedings, because Plaintiffs may still amend their pleadings as a matter of course, and because the Court is denying the preliminary injunction, the Court will assume that Plaintiffs will amend their Complaint to add Roseville Lodging, LLC.  If Plaintiffs fail to so amend, the portions of the Court's present decision as it pertains to the Days Inn Roseville and Roseville Lodging, LLC will no longer apply.

## II.    Legal Standard

The Court considers four primary factors in determining whether a preliminary injunction should be granted:  (1) the threat of irreparable harm to the moving party; (2) the state of balance between the alleged irreparable harm and the harm that granting the injunction would inflict on the other party; 3) the likelihood of the moving party's success on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc*., 640 F.2d 109, 113 (8th Cir. 1981).  This analysis was designed to determine whether the Court should intervene to preserve the status quo until it decides the merits of the case. *Id*.  In each case, the factors must be balanced to determine whether they tilt toward or away from granting injunctive relief.  *See West Pub. Co. v. Mead Data Cent., Inc*., 799 F.2d 1219, 1222 (8th Cir. 1986).  A preliminary injunction is an extraordinary remedy. *See Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.,* 815 F.2d 500, 503 (8th Cir. 1987).  The party requesting the injunctive relief bears the "complete burden" of proving

---

[5]        P. Pooniwala is a member of Roseville Lodging, LLC.

all of the factors listed above.  *Gelco Corp. v. Coniston Partners*, 811 F.2d 414, 418 (8th Cir. 1987).

## III.   Likelihood of Success

This factor requires that the movant establish a substantial probability of success on the merits of its claims.  *See Dataphase*, 640 F.2d at 114.  This factor does not require a plaintiff to demonstrate a "greater than 50% likelihood that he will prevail on the merits."  *Id.* at 113.

The primary focus of Plaintiffs' request for injunctive relief relates to violations of the Minnesota Franchise Act.  Under the Minnesota Franchise Act, a franchisor can terminate a relationship, but a termination must be proper, and must conform to the requirements of the Minnesota Franchise Act.  Specifically, termination must be for good cause.  Minn. Stat. § 80C.14, subd. 3(b) (2013).  "Good cause" is defined as:

> failure by the franchisee to substantially comply with the material and reasonable franchise requirements imposed by the franchisor including, but not limited to:  . . .
>
> (3) voluntary abandonment of the franchise business; . . .  or
>
> (5) any act by or conduct of the franchisee which materially impairs the good will associated with the franchisor's trademark, trade name, service mark, logotype or other commercial symbol.

*Id.*

Defendants argue that because a franchisor has the power to properly terminate the relationship when the terms of a franchise agreement are violated, and they have shown that their terminations were proper and for "good cause," Plaintiffs cannot demonstrate a likelihood of success on the merits.  The Court agrees with Defendants.  It is not disputed

that Defendants had a right to terminate under the franchise agreements for failure to meet quality standards.  (*See* Fenimore Aff. ¶¶ 33, 64, Exs. B, N.)  At this stage of the litigation, Plaintiffs cannot show a likelihood of success on the merits sufficient to tip the balance in favor of granting an injunction.

Though Plaintiffs present evidence that they repeatedly and strenuously contested the QA inspection evaluations and determinations as failing to meet the requirements under the agreement and as not constituting good cause, Defendants present even more evidence supporting their claims of good cause for the terminations.  Defendants point to a long history of QA inspection failures—six failures for the Super 8 Roseville and eight failures for the Travelodge Burnsville—in support of their claim that the terminations were supported by good cause.  Specifically, Defendants present documents showing that the Super 8 Roseville failures date back to January 2012 and continued up to the final failure in December 2013, and that the Travelodge Burnsville failures date back to November 2010 and also continued up to the final failure in December 2013.  (*See, e.g.*, Fenimore ¶ 41, Ex. C.)  In addition to the QA reports, Defendants also present a number of letters and notices relating to these inspections.  (*See, e.g.*, *id.* ¶ 42, Ex. D.)

Defendants also present allegations to rebut Plaintiffs' arguments that Defendants' failure to follow proper QA processes and Defendants' improper terminations amount to purposeful retaliation.  Defendants allege that Plaintiffs continue to run the Days Inn Burnsville, and continue to be allowed to remedy QA failures at that facility.  Plaintiffs also appear to currently continue to operate an entirely different site without QA concerns.

Defendants also present evidence that they terminated the relevant agreements with sufficient notice. Defendants point to the termination notices, which gave Plaintiffs 90-day periods to cure defaults, and additionally present evidence that they allowed and performed re-inspections during those 90 days, but Plaintiffs still failed to cure the alleged defaults. This too undermines the likelihood of success on the merits for Plaintiffs and Plaintiffs' claims that Defendants lack any "good cause" and instead are retaliating against Plaintiffs for the New Jersey litigation.

As to the transfer of the Days Inn Roseville, and failure to grant a franchise license to Plaintiffs for that location, the evidence detailed above sufficiently addresses Plaintiffs' retaliation claim such that it tips the likelihood of success on the merits in Defendants' favor. At this juncture, Plaintiffs have also not shown a likelihood of success on the merits with respect to the Days Inn Roseville.

Accordingly, the Court concludes that Plaintiffs have failed to sufficiently demonstrate a likelihood of success on the merits and therefore this factor weighs against granting the "extraordinary remedy" of a preliminary injunction.

## IV.    Irreparable Harm and Balance of Harms

The movant must establish that irreparable harm will result if injunctive relief is not granted and that such harm will not be compensable by money damages. *See Packard Elevator v. I.C.C.*, 782 F.2d 112, 115 (8th Cir. 1986). The irreparable harm must be "certain and imminent such that there is a clear and present need for equitable relief." *Fam. Fitness of Royal,* 2010 WL 145259, at *2 (citing *Iowa Utils. Bd. v. F.C.C.*,

109 F.3d 418, 425 (8th Cir. 1996)).  Failure to show irreparable harm warrants denial of a preliminary injunction.  *See Gelco Corp. v. Coniston Partners*, 811 F.2d at 418.

Under *Dataphase*, the Court must also consider whether the harm to the movant in the absence of injunctive relief outweighs the potential harm that granting injunctive relief may cause to the non-movant.  *See Dataphase*, 640 F.2d at 114.  [T]he essential inquiry in weighing the propriety of issuing a preliminary injunction is whether the balance of . . . factors tips decidedly toward the movant . . . ."  *General Mills, Inc. v. Kellogg Co.*, 824 F.2d 622, 624 (8th Cir. 1987.)

Plaintiffs argue that they will suffer, and are already suffering, irreparable harm unless:  (1) the termination of their two franchise agreements is stopped; and (2) the assignment of the outstanding franchise agreement goes forward.  Plaintiffs contend that without a preliminary injunction, even if Plaintiffs ultimately win on the merits, the loss of goodwill and customers will not be recoverable and could not be adequately compensated by money damages.  Specifically, Plaintiffs point to the damage to their customer relations and loss of customers and goodwill already suffered since Defendants shut down reservation systems and caused a number of customers to be diverted to other hotels.  Plaintiffs argue that this is particularly true if they lose large, long-standing, key accounts because customers are being diverted elsewhere.  Based on the above, the Court concludes that the loss of goodwill, significant loss of customers, and lost customer relationships are sufficient to constitute irreparable harm.

Defendants, however, counter that when weighing the balance of harms, the scales tip in favor of Defendants.  Defendants argue that if a preliminary injunction is granted,

14

they will suffer harm due to the ongoing trademark infringement caused by Plaintiffs' continued use of their marks and names at properties that are associated with poor quality as found in customer reviews and that repeatedly fail QA inspections.  The Court agrees that this constitutes harm.  Also, where there is a likelihood of confusion by improper use of marks and names, irreparable injury may be established.  *General Mills*, 824 F.3d at 625.  Finally, allowing Plaintiffs, who allegedly cause the harm outlined above, to obtain a license for a new franchise would cause similar harm to Defendants.

In this case, both parties are being significantly harmed by the conduct alleged by the parties.  However, the Court concludes that in considering the balance of harms, the scales do not "tip[] decidedly toward" the moving party.  *See General Mills*, 824 F.3d at 624.  Thus, though Plaintiffs can show irreparable harm, the balance of the harms factor weighs slightly against granting a preliminary injunction.

## V.    Public Interest

The final *Dataphase* factor is whether injunctive relief is in the public's interest. *See Dataphase*, 640 F.2d at 114.  The Court concludes the public interest factor weighs in favor of neither party.  It is in the interests of both parties here to present a good image of their businesses to the public at large; Plaintiffs should meet QA requirements, and Defendants should ensure fair and transparent QA inspection processes for their franchisees.  This factor tips against granting the extraordinary relief of a preliminary injunction.

## CONCLUSION

The Court concludes that, taken all together, the *Dataphase* factors weigh slightly in favor of denying a preliminary injunction. The Court acknowledges that Plaintiffs have likely presented sufficient evidence to overcome a motion to dismiss, but a motion to dismiss involves a different standard than a request for the "extraordinary remedy" of a preliminary injunction. The Court further notes that, in accordance with its comments from the bench, both parties are being harmed by the conduct at issue in this case, and the Court fails to understand why it is not in the best business-interests of the parties to settle this dispute. Accordingly, the Court orders the parties to mandatory settlement.

## ORDER

Based upon the parties' submissions and arguments, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1.      Plaintiffs' Motion for Preliminary Injunction (Doc. No. [12]) is **DENIED.**

2.      The parties are ordered to schedule a settlement conference before the Magistrate Judge within thirty (30) days of the entry of this Order.

3.      Plaintiffs shall amend their Complaint in a manner that addresses standing issues and consistent with this opinion within thirty (30) days of the entry of this Order.


Dated:  May 2, 2014                        s/Donovan W. Frank
                                           DONOVAN W. FRANK
                                           United States District Judge